1   KAREN P. HEWITT
    United States Attorney
2   ANDREW G. SCHOPLER
    Assistant U.S. Attorney
3   California State Bar No. 236585
    Federal Office Building
4   880 Front Street, Room 6293
    San Diego, California 92101-8893
5   Telephone:  (619) 557-5836 / (619) 557-3445 (fax)
    E-mail: Andrew.Schopler@usdoj.gov
6

7   Attorneys for Plaintiff
    United States of America
8

9                      UNITED STATES DISTRICT COURT

10                   SOUTHERN DISTRICT OF CALIFORNIA

11  UNITED STATES OF AMERICA,          )   Criminal Case No. 07CR3281-H
                                       )
12                    Plaintiff,       )   DATE: July 21, 2008
                                       )   TIME:  9:00 p.m.
13  v.                                 )
                                       )
14  JAVIER SOTO-CASTRO,                )   GOVERNMENT'S MOTIONS IN LIMINE
                                       )
15                    Defendant.       )   (1)   TO PERMIT EXPERT TESTIMONY;
                                       )   (2)   ADMIT DEMEANOR EVIDENCE;
16                                     )   (3)   ADMIT CERTIFIED DOCUMENTS
                                       )         AND DOCUMENTS SEIZED FROM
17                                     )         DEFENDANT;
                                       )   (3)   PRECLUDE PENALTY EVIDENCE
18                                     )   (4)   PROHIBIT   REFERENCE   TO
                                       )         DEFENDANT'S  HEALTH,  AGE,
19                                     )         FINANCES AND EDUCATION;
                                       )   (5)   PRECLUDE DEFENDANT'S OUT-
20                                     )         OF-COURT STATEMENTS;
                                       )   (6)   LIMIT    TESTIMONY    OF
21                                     )         CHARACTER  WITNESSES  AND
                                       )         LACK OF PRIOR RECORD;
22                                     )   (7)   TO INTRODUCE STATEMENTS
                                       )         MADE BY DEFENDANT DURING
23                                     )         BOOKING;
                                       )   (8)   EXCLUDE EXPERT TESTIMONY
24  _____)         OFFERED BY THE DEFENSE
                                       )   (9)   EXCLUDE WITNESSES
25

26      COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

27  Karen P. Hewitt,  United States Attorney, and Andrew G. Schopler, Assistant United States Attorney,

28  and hereby files its Motions in Limine in the above-referenced case.

**I**

**STATEMENT OF FACTS**

**A.    CHARGES AND CASE STATUS**

On December 5, 2007, a federal grand jury in the Southern District of California returned a two-count Indictment in case number 07CR3281-H, charging Defendant Javier Soto-Castro ("Defendant") with (1) importing approximately 11.96 kilograms of methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and (2) possessing with intent to distribute approximately 11.96 kilograms of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

A Motions in Limine Hearing is scheduled for Monday, July 21, 2008 at 9:00 a.m. Trial is scheduled for Tuesday, July 22, 2008 at 9:00 a.m. before the Honorable Marilyn L. Huff.

**B.    THE OFFENSE**

On November 25, 2007, at approximately 1:58 p.m., Defendant entered the United States from Mexico in lane number 7 at the Calexico West Port of Entry, as the registered owner, driver and sole occupant of a gray 2004 Dodge Neon, bearing California license plate number 6AUX707.

**1.    PRIMARY INSPECTION: Nervousness**

At primary inspection, Defendant presented his Permanent Resident Card to Customs and Border Protection Officer ("CBPO") Carlos Dorantes, who noticed that Defendant's hand was trembling when he handed over the card. During the questioning, Defendant continued to act nervous, avoiding eye contact and acting like he was in a hurry to leave. Defendant stated that he was on his way home to Coachella Valley after visiting family members in Mexicali for a day. Defendant claimed ownership of the vehicle, and stated that he worked as a security guard. During the inspection, CBPO Dorantes also noticed that there was only one key in the ignition. Based primarily on the nervousness, CBPO Dorantes referred Defendant to secondary inspection.

**2.    SECONDARY INSPECTION: 11.96 kg of Methamphetamine**

In the secondary inspection area, Canine Enforcement Officer ("CEO") Kenneth Caldera's narcotic detector dog ("NDD") alerted to the dash area of the vehicle during a lot sweep. CEO Caldera notified CBPO Ramiro Castillo of the alert.

CBPO Castillo escorted Defendant to the secondary security office, where a pat-down was

1 | conducted for weapons or contraband (with negative results). While in the secondary office, Defendant

2 | made a number of statements to CBPO Castillo, in response to questions about the vehicle, the purpose

3 | of his trip, and his activities in Mexico. Defendant stated that he had owned the vehicle for about four

4 | months. He stated that he had arrived in Mexicali the previous night, where he was "partying." He then

5 | said "he had actually come to his cousin's wedding" and that he had stayed at his wife's home in

6 | Mexicali. He reiterated that he was going home to Coachella, and that he worked as a security guard

7 | at Bower Security.

8 | During a subsequent search of the vehicle, officers discovered a non-factory compartment in the

9 | vehicle's dashboard that concealed 20 packages of methamphetamine. The methamphetamine weighed

10 | 11.96 kilograms (gross), with a purity of 91.9%. That amounts to a Calexico, California, wholesale

11 | value of $276,255 and a retail value of $336,768.

12 | **3.    POST-ARREST INVESTIGATION: Second Vehicle at AA Parking**

13 | During a search of Defendant's personal effects, Immigration and Customs Enforcement ("ICE")

14 | Special Agent ("SA") Mathew Kelley found a second set of keys, including a key for a Honda Civic

15 | (there had been only one key in the ignition of the Dodge Neon load vehicle). In addition, in

16 | Defendant's wallet, SA Kelley found a parking stub for Double AA Parking, which had been stamped

17 | November 25, 2007 (the date of arrest). SA Kelley traveled from the Calexico West Port of Entry to

18 | Double AA Parking, two blocks away, where he found that the parking ticket stub corresponded to a

19 | white Honda Civic registered to Defendant.

20 | **4.    POST-ARREST BIOGRAPHICAL INTERVIEW**

21 | After Defendant's arrest, Immigration and Customs Enforcement ("ICE") Special Agent ("SA")

22 | Mathew Kelley and SA Jerry Conrad conducted a biographical interview with Defendant in the English

23 | language. Defendant stated that he had no spouse nor children, and that he lived in Coachella,

24 | California, with his father. After being advised of his Miranda rights, Defendant invoked his right to

25 | remain silent.

26 | //

27 | //

28 | //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**II**

**MEMORANDUM OF POINTS AND AUTHORITIES**

A.    **EXPERT TESTIMONY FROM GOVERNMENT AGENTS SHOULD BE PERMITTED**

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. The trial Court has broad discretion to admit expert testimony. See, e.g., United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995). An expert may base his opinion on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

**1.    The Substance Seized is Methamphetamine**

The Government intends to introduce the testimony of  DEA Chemist James L. Jacobs in this case. Mr. Jacobs will testify that he performed various tests on the substance seized from Defendant's Dodge Neon. Morever, the chemist will testify that the results of these tests all indicated the presence of methamphetamine. This chemist will base any expert opinions on his background, education and experience, along with his knowledge and use of the accepted scientific methods used when testing an unknown substance for the presence of controlled substances.

**2.    Value of the Methamphetamine**

The United States expects to present the testimony of United States Immigration and Customs Enforcement Special Agent Brandon Stiefer,  who will testify as an expert regarding the wholesale dollar value of the methamphetamine seized from the defendant.  The agent will also testify about how methamphetamine is consumed by the typical end user.  The expert will testify that the quantity of methamphetamine seized from defendant was far greater than a consumer would possess for personal use.

The testimony will focus on the wholesale and retail values of the methamphetamine  seized in this case, figures which have relevance to defendant's intent to distribute. *See* United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (finding that price and quantity of narcotics is relevant to defendant's intent to distribute). The Ninth Circuit has upheld the admissibility of expert testimony

4

07CR3281-H

1  as to the *retail* value of drugs.  *See* United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994).

2  Accordingly, no basis exists for excluding this testimony as to the value of the drugs.

3      Additionally,  Agent Stiefer will state his opinion that the amount of methamphetamine seized

4  was for distribution rather than personal use.   This opinion will be based on the value and amount of

5  methamphetamine and the manner in which the methamphetamine was packaged.    Further, it is expected

6  that Agent Stiefer  will base his opinions on his experience investigating these types of cases, as well

7  as, his hands-on experience interrogating smugglers, debriefing confidential informants and discussing

8  intelligence information with other agents.

9      **3.**    **Structure of Methamphetamine Operations**

10      The Government does not intend to present expert testimony about the structure of

11  methamphetamine smuggling operations, including the division of labor and drug smuggling techniques.

12  However, the Government reserves the right to present such testimony if Defendant open the door by

13  raising the issue of lack of fingerprints taken from the vehicle or other such issues.  United States v.

14  Vallejo, 237 F.3d 1008, 1016, n. 3, (9th Cir. 2001).  That door may be opened through a defendant's

15  cross-examination of the Government's witness, United States v. Beltran-Rios, 878 F.2d 1208, 1210-13

16  (9th Cir. 1989), or a  Defendant's introduction of negative profile testimony, namely, evidence

17  suggesting that the Defendant possesses certain characteristics inconsistent with an inference of guilt.

18  United States v. Sotelo-Murillo, 887 F.2d 176, 183 (9th Cir. 1989).

19      **B.**    **DEMEANOR EVIDENCE IS ADMISSIBLE**

20      Evidence regarding a defendant's demeanor and physical appearance is admissible as

21  circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew drugs

22  were concealed in the vehicle. Fed.R.Evid. 701;  United States v. Hursh, 217 F.3d 761  (9th Cir. 2000)

23  (jury may consider defendant's nervousness during questioning at Calexico port of entry); United States

24  v. Fuentes-Cariaga, 209 F.3d 1140, 1144 (9th Cir. 2000) (it is within the ordinary province of jurors to

25  draw inferences from an undisputed fact such as a defendant's nervousness at Calexico Port of Entry);

26  United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990) (jury could infer guilty knowledge from

27  a defendant's apparent nervousness and anxiety during airport inspection); United States v. Lui, 941

28  F.2d 844, 848 (9th Cir. 1991) (jury could consider guilty knowledge from a defendant's acting

1  disinterested during airport inspection).

2      Here, government officers may properly testify to Defendant's demeanor and physical

3  appearance, as they have personal knowledge based upon their observations of defendant.

4      **C.    ADMISSIBILITY OF CERTIFIED DOCUMENTS AND DOCUMENTS SEIZED FROM DEFENDANT**

5

6      Ninth Circuit law is clear that the documents seized are properly admissible against defendant.

7  The documents are admissible as non-hearsay since the United States does not intend to introduce them

8  to prove the truth of the matter asserted.  In addition, certified copies of documents from certain

9  governmental agencies, such as the California Department of Motor Vehicles or from county

10  courthouses, are self-authenticating.  Fed.R.Evid.  801(c), 803, 902(4).  *See* United States v. Abascal,

11  564 F.2d 821, 830 (9th Cir. 1977), *cert. denied sub nom.* Frakes v. United States, 435 U.S. 942 (1977).

12      **D.    ANY EVIDENCE OF PENALTY SHOULD BE PRECLUDED.**

13      As always, any mention of penalty or felony status is irrelevant as it sheds no light on the

14  defendant's guilt or innocence.  The Court is the sole entity that is to consider punishment.  The jury,

15  as trier of fact, is simply to determine, based on evidence, whether certain events did or did not occur;

16  and whether those events satisfy the elements of the charged crime.  Punishment is not an element that

17  necessarily needs to be proven by the Government.  Moreover, the introduction of penalty would

18  introduce evidence that would invite the jury to speculate as to what might or might not happen at

19  sentencing.  The United States, therefore, respectfully requests this Court to preclude any mention of

20  possible penalty and/or felony designation at any point during the trial.

21      **E.    THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANTS' HEALTH, AGE, FINANCES AND EDUCATION**

22      Evidence of, and thus argument referring to, Defendant's health, age, finances, education and

23  other personal background information is inadmissible and improper.

24      Rule of Evidence 402 provides that "Evidence which is not relevant is not admissible."  Rule

25  403 provides further that even relevant evidence may be inadmissible "if its probative value is

26  substantially outweighed by the danger of unfair prejudice."  The Ninth Circuit Model Jury Instructions

27  explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices,

28

1    or sympathy." § 3.1 (2000 Edition).[1]

2        Reference to a defendant's health, age, finances, education and other personal background

3    information may be relevant at sentencing.  However, in a narcotics offense trial, such references are

4    not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as

5    well.

6        Any such argument or reference would be an improper attempt to have the jury unduly

7    influenced by sympathy for the defendant and prejudice against the Government. See 9th Cir. Jury Inst.

8    § 3.1 (2000).  Therefore, the Government hereby moves in limine for the Court to order defense counsel

9    not to mention or reference such information without an offer of proof or this Court's determination of

10   relevance.

11       **F.        DEFENDANT MAY NOT INTRODUCE HIS  OUT OF COURT STATEMENTS**

12       Defendant must be precluded from introducing his own statements through the testimony of

13   another witness.  Defendant must also be precluded from introducing his statements during opening

14   statements. Any such attempt would be impermissible because those statements are hearsay. Defendant

15   cannot rely on Federal Rule of Evidence 801(d)(2) because he is  not the proponent of the evidence and

16   the evidence is not being offered against them.  Defendant cannot attempt to have "self-serving hearsay"

17   brought before the jury without the benefit of cross-examination by the United States.  E.g., United

18   States v. Fernandez, 839 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 832 (1988).  Nor can defendant

19   rely on Rule 801(d)(1)(B), which provides that a statement is not hearsay if:

20       The declarant testifies at trial or hearing and is subject to cross-examination concerning
         the statement, and the statement is . . . consistent with the declarant's testimony and is
21       offered to rebut an express or implied charge against the declarant of recent fabrication
         or improper influence or motive . . . .
22

23       A prior consistent statement is not admissible if it is introduced in the absence of impeachment.

24   United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976), *cert. denied*, 429 U.S. 1045

25   (1977) (appellant offered to introduce and play tape recording of interview of appellant and DEA agent

26   to reinforce appellant's credibility).  Moreover, even if the declarant's testimony has been impeached,

27   _____

28       [1]    Additionally, it is inappropriate for a jury to be informed of the consequences of their
         verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992).

1  prior consistent statements are not admissible if the declarant had motive to give false information at

2  the time that the prior out-of-court statement was made.  United States v. DeCoito, 764 F.2d 690, 694

3  (9th Cir. 1985) (declarant's prior consistent statement not admissible for purposes of rehabilitation since

4  declarant had motive to lie to avoid prosecution for involvement in assault when prior statement was

5  made); United States v. Rohrer, 708 F.2d 429, 433 (9th Cir. 1983)(diagram drawn by declarant not

6  admissible as prior consistent statement because declarant had motive when diagram was made to

7  fabricate, that is, driving better leniency bargain with the government).

8          Finally, Defendant cannot rely on Rule 803(3), which provides that the hearsay rule does not

9  exclude the following:

10          (3)    Then existing mental, emotional, or physical condition.  A statement of the
                declarant's then existing state of mind, emotion, sensation, or physical condition
11              (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but
                not including a statement of memory or belief to prove the fact remembered or
12              believed . . . .

13  Fed.R.Evid. 803(3) (Emphasis added.)

14          Addressing this issue in the context of a "derivative entrapment" defense, the Ninth Circuit

15  affirmed the trial court's exclusion of testimony by a witness that the defendant had told the witness that

16  the defendant was afraid of government agents.  The court relied on the language emphasized above in

17  Rule 803(3), holding that the rule did not except the witness's testimony from the hearsay rule.  United

18  States v. Emmert, 829 F.2d 805 (9th Cir. 1987).

19          Defendant cannot introduce his own statements through the testimony of another witness or by

20  improper reference during opening statements.  Defendant is free to provide a statement from the

21  witness stand where he would properly be subject to searching cross-examination.

22      **G.    LIMIT TESTIMONY OF CHARACTER WITNESSES AND LACK
                OF PRIOR RECORD**

23

24          In introducing positive character evidence, defendant must restrict himself to evidence regarding

25  "law abidingness" and honesty.  Defendant  may not introduce evidence concerning specific instances

26  of good conduct, lack of a prior record, or propensity to engage in specific bad acts such as drug

27  smuggling or distribution.  United States v. Hedgecorth, 873 F.2d 1307, 1313 (9th Cir. 1987) ("[W]hile

28  a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence

    of specific acts is generally inadmissible.") (citations omitted); United States v. Barry, 814 F.2d 1400,

1    1403 (9th Cir. 1987); Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985)

2    ("[T]estimony that one has never been arrested is especially weak character evidence".)

3    **H.    THE GOVERNMENT SHOULD BE  PERMITTED TO OFFER
        STATEMENTS MADE BY DEFENDANT IN RESPONSE TO
4        ROUTINE BOOKING QUESTIONS**

5    Agents' "questions focused on [a defendant's] name, address, date of birth, height and weight"

6    and other "limited, biographical questions are permitted even after a person invokes his or her Miranda

7    rights; this court and the Supreme Court generally do not view inquiries regarding general biographical

8    information as 'interrogation.'" United States v. Foster, 227 F.3d 1096, 1103 (9th Cir. 2000) (emphasis

9    added) (citing Pennsylvania v. Muniz, 496 U.S. 582 (1990) (plurality opinion) (establishing a "routine

10   booking question" exception under which questions regarding name, address, height, weight and other

11   general information do not constitute interrogation), and United States v. Booth, 669 F.2d 1231, 1238

12   (9th Cir. 1981) ("Ordinarily, the routine gathering of background biographical data will not constitute

13   interrogation.") (emphasis added)).

14   A few cases are instructive.  In United States v. Manasen, 909 F.2d 1357 (9th Cir. 1990),

15   Canadian Customs officials alerted U.S. Customs officials that the defendant, who had an outstanding

16   California warrant, was traveling by bus to Seattle.  They also informed U.S. officials that the defendant

17   might be using the alias "Alan Goodwin" and carrying $15,000 in cash.  Upon the defendant's arrival

18   at the Port of Entry, a U.S. Customs official had the defendant fill out a standard customs declaration

19   form, on which the defendant identified himself falsely as "Alan Goodwin" and indicated (falsely) that

20   he was carrying less than $10,000 in cash.  The defendant was then immediately arrested and charged

21   with, inter alia, making false statements as to his identity and the amount of currency in his possession,

22   in violation of 18 U.S.C. § 1001.  The Ninth Circuit held that even where probable cause to arrest exists,

23   "customs officials were still duty-bound to follow their normal process and were not precluded from

24   asking [the defendant] the usual inspection questions." Manasen, 909 F.2d at 1358.  "In fact, to hold

25   otherwise would be to impair the effectiveness of United States Customs." Id. at 1359.

26   In United States v. Reyes, 225 F.3d 71 (1st Cir. 2000), after the defendant was arrested on drug

27   conspiracy charges, "he gave a false name, date of birth, and social security number to a federal law

28   enforcement officer interviewing him for 'booking' purposes." Id. at 73.  As a result, he was charged

1   with making a false statement to a federal officer, in violation of 18 U.S.C. § 1001(a). Defendant moved

2   to suppress the statements based on a violation of his <u>Miranda</u> rights.  Although the First Circuit

3   presumed that the defendant had not given a valid <u>Miranda</u> waiver, it ruled that the statements were

4   nevertheless admissible in his trial for false statements to a federal officer, because the questions "fall

5   within the booking exception to <u>Miranda</u>'s warning requirement."  <u>Reyes</u>, 225 F.3d at 77.  The court

6   found it significant that the officer "asked only those questions indicated on the standard DEA booking

7   form" and that the booking interview was conducted "separate from any substantive interrogation, by

8   a different officer and in a separate room at a separate time."  <u>Id.</u>

9          Finally, in <u>United States v. Gill</u>, 879 F.Supp. 149 (D. Me. 1995), officers arrested the defendant

10  on outstanding warrants.  At the time of his arrest, the defendant presented a passport that falsely

11  indicated he was born in Switzerland; during his transport to the jail, he also falsely stated that he was

12  born in Switzerland, in response to questioning; and he also falsely stated that he was born in

13  Switzerland in connection with his booking at the jail.  After the discovery of his true place of birth, the

14  defendant was charged with knowingly using a passport, which was secured by means of a false

15  statement.  The <u>Gill</u> court denied the defendant's motion to suppress, holding all of the statements

16  admissible, without <u>Miranda</u> warnings.  The court noted that "absent evidence that the police used the

17  booking questions to elicit incriminating statements from Gill, routine biographical questions [such as

18  place of birth] are not considered interrogation."  <u>Gill</u>, 879 F.Supp. at 152 (emphasis added).

19         All of these authorities underscore the fact that a federal officer need not administer <u>Miranda</u>

20  warnings before asking questions which are part of the routine processing protocol.

21  **I.      EXPERT TESTIMONY BY THE DEFENSE SHOULD BE EXCLUDED**

22         The Defendant has not provided notice to the Government of its intent to introduce expert

23  testimony nor has the Government received any discovery or written summary of any such testimony

24  that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence.   As

25  such, this Court should exclude any expert testimony offered by Defendant.

26  **J.      THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL,
         EXCEPT FOR THE UNITED STATES' CASE AGENT**

27

28         The United States moves to exclude all witnesses from the courtroom during trial, with the

    exception of the United States' case agent.  Both counsel should be entitled to be aided at counsel table

1  by someone thoroughly versed in the facts of the case.  Defense counsel will be able to consult with

2  Defendant in this regard, and therefore the Government should be afforded the same ability to consult

3  with someone familiar with the facts of the case.

4        Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be

5  essential to the presentation of the party's cause" should not be ordered excluded from the court during

6  trial.  The case agent in the present matter has been critical in moving the investigation forward to this

7  point and is considered by the United States to be essential to the presentation.  As such, the case agent's

8  presence at trial is necessary to the United States.

9                                    **III**

10                              **CONCLUSION**

11        For the above stated  reasons, the Government requests that it's Motions in Limine be granted.

12        DATED: July 13, 2008

13                                             Respectfully submitted,

14                                             KAREN P. HEWITT
                                               United States Attorney

15

16                                      /s/ *Andrew G. Schopler*
                                               ANDREW G. SCHOPLER

17                                             Assistant U.S. Attorney

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                         SOUTHERN DISTRICT OF CALIFORNIA

7
    UNITED STATES OF AMERICA,           )  Criminal Case No. 07CR3281-H
8                                        )
                 Plaintiff,              )
9                                        )
                 v.                      )  CERTIFICATE OF SERVICE
10                                       )
    JAVIER SOTO-CASTRO,                  )
11                                       )
                 Defendant.              )
12                                       )
    _____ )
13

14   IT IS HEREBY CERTIFIED THAT:

15        I, ANDREW G. SCHOPLER, am a citizen of the United States and am at least eighteen years
     of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.
16
          I am not a party to the above-entitled action.  I have caused service of **UNITED STATES'
17   MOTIONS IN LIMINE** on the following parties by electronically filing the foregoing with the Clerk
     of the District Court using its ECF System, which electronically notifies them.
18
          1.    Robert H. Rexrode III
19
          I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
20   Service, to the following non-ECF participants on this case:

21        N/A

22   the last known address, at which place there is delivery service of mail from the United States Postal
     Service.
23
          I declare under penalty of perjury that the foregoing is true and correct.
24
          Executed on July 13, 2008
25

26                                       /s/ *Andrew G. Schopler*
                                         ANDREW G. SCHOPLER
27                                       Assistant U.S. Attorney

28

                                         12                           07CR3281-H